AF Approval _BW_                          Chief Approval _RBH_

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                                   CASE NO. 6:20-cr-80-Orl-37DCI

JAKELINE LUMUCSO

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by
Maria Chapa Lopez, United States Attorney for the Middle District of
Florida, and the defendant, JAKELINE LUMUCSO, and the attorney for the
defendant, David L. Haas, Esquire, mutually agree as follows:

**A.    Particularized Terms**

    1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the
Indictment.  Count One charges the defendant with conspiracy to defraud the
United States with respect to claims, in violation of 18 U.S.C. § 286.

    2.    Maximum Penalties

Count One carries a maximum sentence of 10 years'
imprisonment, a fine of not more than $250,000, or twice the gross gain
caused by the offense, or twice the gross loss caused by the offense, whichever
is greater, a term of supervised release of not more than 3 years, and a special

Defendant's Initials _J.L._

assessment of $100 per felony count for individuals. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.   <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

<u>First:</u>    Two or more people in some way agreed to try to accomplish a shared and unlawful plan;

<u>Second:</u>    The defendant knew the unlawful purpose of the plan and willfully joined in it; and

<u>Third:</u>    The plan was to defraud the government by obtaining the payment or allowance of a claim based on a false or fraudulent material fact.

4.   <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials ___JC.___          2

5.  <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to U.S. Department of the Treasury, Internal Revenue Service.

6.  <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this plea agreement, including, but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for

acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

    7.    <u>Low End</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

    8.    <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's

possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials ⟋·⟍                    5

9. <u>Use of Information - Section 1B1.8</u>

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10. <u>Cooperation - Responsibilities of Parties</u>

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest

Defendant's Initials _J.C._           6

knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by

information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

**B.**     **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

          The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

          On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  To ensure that this obligation is satisfied, the defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount

Defendant's Initials ͟S͟·͟L͟͟͟       9

of $100, payable to "Clerk, U.S. District Court" within ten days of the change

of plea hearing. The defendant understands that this agreement imposes no

limitation as to fine.

    2.    <u>Supervised Release</u>

        The defendant understands that the offense to which the

defendant is pleading provides for imposition of a term of supervised release

upon release from imprisonment, and that, if the defendant should violate the

conditions of release, the defendant would be subject to a further term of

imprisonment.

    3.    <u>Immigration Consequences of Pleading Guilty</u>

        The defendant has been advised and understands that, upon

conviction, a defendant who is not a United States citizen may be removed

from the United States, denied citizenship, and denied admission to the

United States in the future.

    4.    <u>Sentencing Information</u>

        The United States reserves its right and obligation to report to the

Court and the United States Probation Office all information concerning the

background, character, and conduct of the defendant, to provide relevant

factual information, including the totality of the defendant's criminal activities,

if any, not limited to the count to which defendant pleads, to respond to

Defendant's Initials ꟷꟷꟷ        10

comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this plea agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state,

and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly

Defendant's Initials ☒⟋⟋        12

reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and

cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

      9.    <u>Filing of Agreement</u>

      This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

      10.    <u>Voluntariness</u>

      The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the

Defendant's Initials ⟋⟍⟍⟍⟋          14

right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Defendant's Initials ___ə·ᒣ___          15

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 30th day of October, 2020.

MARIA CHAPA LOPEZ
United States Attorney

_____
JAKELINE LUMUCSO
Defendant

_____
Karen L. Gable
Assistant United States Attorney

_____
David L. Haas, Esquire
Attorney for Defendant

_____
Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials J.L.                    16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:20-cr-80-Orl-37DCI

JAKELINE LUMUCSO

## PERSONALIZATION OF ELEMENTS

First:      Did you agree with Petra Gomez and others to try to
            accomplish a shared and unlawful plan?

Second:     Did you know the unlawful purpose of the plan and
            willfully join in it?

Third:      Was the plan to submit false and fraudulent tax returns to
            the IRS to obtain fraudulent tax refunds?

Defendant's Initials ⏜ J·L·        17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:20-cr-80-Orl-37DCI

JAKELINE LUMUCSO

FACTUAL BASIS

Beginning on an unknown date, but at least by in or about January

2012, and continuing through at least June 2016, in the Middle District of

Florida and elsewhere, the defendant, Jakeline LUMUCSO, conspired with

her sister, Petra Gomez (Gomez), and others, to defraud the Internal Revenue

Service ("IRS"), by submitting false tax returns to obtain fraudulent tax

refunds through Gomez's business, Universal Tax. Gomez and LUMUCSO

prepared and caused others to prepare false tax returns using the unauthorized

personal information of previous tax clients. They also prepared and caused

others to prepare fraudulent tax returns using false information regarding

income and deductions. LUMUCSO knew the unlawful purpose of the plan

and voluntarily joined in it.

Gomez was the owner of Universal Tax, LLC, also known as Universal

Tax Latino, LLC, a tax preparation business she established in 2010 as a sole

member LLC. LUMUCSO managed the day-to-day operations of Universal

Defendant's Initials 〰〰          18

Tax at the direction of Gomez. Initially, Gomez operated Universal Tax from an office located at 12315 West Colonial Drive, Winter Garden. In or about 2011, Gomez opened three more offices located at (1) 851 State Road 436, Suite 1023, Altamonte Springs; (2) 5805 South Orange Blossom Trail, Orlando; and (3) 6412 West Colonial Drive, Orlando. Gomez also briefly operated an office in Tampa, Florida. Gomez and LUMUCSO hired individuals to prepare tax returns at each of the locations. Gomez instructed LUMUCSO to hire individuals who had no tax preparation experience and who spoke Spanish.

Gomez and LUMUCSO obtained Electronic Filing Identification Numbers ("EFIN") from the IRS for each of Universal Tax's office locations, which authorized Universal Tax to participate in the IRS's e-file program and electronically file tax returns from each of its locations. Gomez marketed Universal Tax to the Latino community, and many of her tax clients were undocumented and nonresident aliens. Gomez also traveled to agricultural farms in Georgia and Florida and prepared false tax returns for foreign workers, which she filed through Universal Tax. In addition to preparing tax returns, Gomez and LUMUCSO also prepared and caused others to prepare and submit applications for Individual Taxpayer Identification Numbers ("ITIN") to the IRS. An ITIN was a processing number that enabled

Defendant's Initials ʘ̄ C .          19

undocumented and nonresident aliens who worked in the United States to file tax returns and obtain tax refunds. The ITIN was a unique nine-digit number with the format 9xx-xx-xxxx. Gomez and LUMUCSO submitted and caused others to submit false utility and other residency documents to the IRS to obtain ITINs for their clients.

Gomez charged about $50 to prepare an ITIN application and approximately $300 to prepare a tax return. On Universal Tax's facebook page and on signage outside of her offices, Gomez advertised "100% Refund Guarantee." Gomez and LUMUCSO, acting at Gomez's direction, placed instruction sheets at each of the computers in the offices containing items that could be added to a tax return to make the refund higher, such as dependents.

Beginning in about 2012, Gomez and LUMUCSO, acting at Gomez's direction, also instructed employees to file fraudulent tax returns for previous Universal Tax clients without their consent. Gomez instructed preparers to submit the false returns when the IRS filing season opened, and provided them with false W-2s, IDs and dependent information to use on the returns to generate tax refunds. Gomez directed employees to use the names and ITINs of previous clients without their consent on the returns. If a client returned to have Universal Tax prepare a tax return, Gomez and LUMUCSO instructed

the preparers to lie to the client and state that a return had already been prepared and filed due to a computer glitch.

Gomez processed tax refunds through a third-party processor, and LUMUCSO was responsible for printing the tax refund checks, after the IRS notified the processor that the IRS had issued the refund. The processor deducted Universal Tax's tax preparation fee from the refund and deposited the refunds into Universal Tax's business account. LUMUCSO and others placed the fraudulently obtained refund checks in lock boxes, and Gomez and other unindicted co-conspirators fraudulently cashed the unclaimed refund checks at check cashing businesses located in Ocala and other areas in central Florida.

On January 27, 2014, Universal Tax filed a false 2013 tax return using M.G.'s name and ITIN without M.G.'s consent. Previously, Universal Tax prepared M.G.s 2011 and 2012 tax returns, but M.G. went to a different preparer to have M.G.'s 2013 tax return prepared. The IRS rejected the return, because Universal Tax had already filed a 2013 tax return using M.G.'s personal information without M.G.'s consent. M.G. confirmed that the W-2 and wage information on the return were false and M.G. did not receive the tax refund.

Defendant's Initials _JC._          21

Similarly, on February 7, 2014, Universal Tax filed a false joint 2013 tax return using the personal information belonging to G.C. and N.G. without their consent. The return listed LUMUCSO as the preparer and was filed from the Winter Garden office. The victims previously had their 2011 and 2012 tax returns prepared at Universal Tax, but decided not to have Universal Tax prepare their 2013 tax return, because the IRS flagged their 2012 tax return as false. G.C. and N.G. confirmed that the W-2 and wage information on the 2013 return were false and that they did not receive the refund.

On January 28, 2014, Gomez prepared and filed a false 2013 tax return using the personal information belonging to J.P., who lived in Georgia. Gomez filed the return from the Winter Garden office. Gomez previously prepared J.P.'s 2012 tax return when she traveled to Georgia to prepare returns. J.P. confirmed that the wage and dependent information on the 2013 return were false and that the W-2 attached to the 2013 return was false. J.P. notified the state police, who then notified the IRS.

On or about April 22, 2014, the IRS suspended Gomez and Universal Tax from participating in the IRS's e-file program for filing fraudulent tax returns and revoked Universal Tax's EFINs. Thereafter, in or about May 2014, Gomez and LUMUCSO changed Universal Tax's name to Universal Financial, Inc., and listed Universal Tax's Winter Garden office as Universal

Financial's principal address with the State of Florida. Between in or about June 2014, and in or about July 2014, LUMUCSO obtained EFINs for Universal Tax's office locations using the name Universal Financial, Inc. LUMUCSO listed herself as the principal of the business and the primary contact on the EFIN application. Gomez and LUMUCSO continued to operate Universal Tax and e-file false tax returns to the IRS using Universal Financial's EFINs.

In or about October 2015, the IRS suspended LUMUCSO and Universal Financial, Inc., from participating in the IRS's e-file program and revoked Universal Financial's EFINs due to fraud. On or about October 26, 2015, Gomez and LUMUCSO used a nominee to incorporate Resurrection Tax, Inc., a shell corporation, and listed Universal Tax's Winter Garden office address as Resurrection Tax's principal address with the State of Florida. On or about November 5, 2015, Gomez and LUMUCSO, using an individual nominee, applied for, and obtained an EFIN for Universal Tax's Winter Garden office in the name Resurrection Tax, Inc. Gomez and LUMUCSO listed the nominee as the principal of the business and the primary contact on the EFIN application and continued to file false tax returns.

On or about October 26, 2015, Gomez and LUMUCSO used a nominee to incorporate Living Faith Tax, Inc., a shell corporation, and listed

Defendant's Initials _O C._          23

Universal Tax's South Orange Blossom Trail office address as Living Faith

Tax's principal address with the State of Florida. On or about November 3,

2015, Gomez and LUMUCSO, using a nominee, applied for, and obtained an

EFIN for Universal Tax's South Orange Blossom Trail office in the name

Living Faith Tax, Inc. Gomez and LUMUCSO listed the nominee as the

principal of the business and the primary contact on the EFIN application.

On or about October 27, 2015, Gomez and LUMUCSO used a

nominee to incorporate Living Hope Tax, Inc., a shell corporation, and listed

Universal Tax's Altamonte Springs office address as Living Hope Tax's

principal address with the State of Florida. On or about November 6, 2015,

Gomez and LUMUCSO, using a nominee, applied for, and obtained an EFIN

for Universal Tax's Altamonte Springs office in the name of Living Hope Tax,

Inc. Gomez and LUMUCSO listed the nominee as the principal of the

business and the primary contact on the EFIN application.

During the period 2013 and 2014, Gomez built luxury homes for herself

and for LUMUCSO and paid more than $1 million in cash for her home and

more than $800,000 for LUMUCSO's home. Gomez also previously paid

LUMUCSO about $250,000 in commissions.

Gomez and LUMUCSO, through Universal Tax and its nominees,

submitted or caused the submission of about 7234 false tax returns claiming

Defendant's Initials _J.C._          24

refunds to the IRS.  The fraud loss is more than $9.5 million and less than $25 million dollars.